UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LESTER L. SPIVEY, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:13-cv-01626-DML-JMS |
| | ) |
| CAROLYN W. COLVIN | ) |
| | ) |
| Defendant. | ) |

## Decision on Complaint for Judicial Review

Plaintiff Lester L. Spivey, Sr. applied on June 15, 2010, for Disability Insurance Benefits (DIB) and Supplemental Security Income disability benefits (SSI) under Titles II and XVI of the Social Security Act, alleging that he has been disabled since October 7, 2008. An administrative law judge ("ALJ") held a hearing on January 4, 2012, at which Mr. Spivey appeared and testified. On March 26, 2012, acting for the Commissioner of the Social Security Administration ("SSA"), the ALJ denied Mr. Spivey's claim, finding that he is not disabled. The Appeals Council denied review of the ALJ's decision on August 12, 2013, rendering the ALJ's decision for the Commissioner final. Mr. Spivey timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

### Standard for Proving Disability

To prove disability, a claimant must show that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (DIB benefits); 42 U.S.C. § 1382c(a)(3)(A) (SSI benefits).[1] Mr. Spivey is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled, despite his current medical condition. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The impairment must also meet the twelve-month duration

---

[1] Two programs of disability benefits are available under the Social Security Act: DIB under Title II for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 423 *et seq.*, and SSI disability benefits under Title XVI for uninsured individuals who meet income and resources criteria., 42 U.S.C. § 1381 *et seq*. The court's citations to the Social Security Act and regulations promulgated by the Social Security Administration are those applicable to DIB benefits. For SSI benefits, materially identical provisions appear in Title XVI and at 20 C.F.R. § 416.901 *et seq.*

requirement. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to all the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his age, work experience, education, and RFC; if so, then he is not disabled. The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). The Commissioner bears the burden at step five. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## **Applicable Standard of Review**

Judicial review of the Commissioner's (or ALJ's) factual findings is narrow and deferential. They must be upheld "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a

scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. The ALJ's Sequential Findings

Mr. Spivey was forty-three years old at the time of the ALJ's decision (R. 200, 33). He had a high school equivalency diploma and had completed training in automotive mechanics. His past work experience included work as a janitor and parts puller (R. 69).

The ALJ determined at step one that Mr. Spivey had not engaged in substantial gainful activity since October 7, 2008, the alleged onset date. At step two, the ALJ identified the following severe impairments: tendinopathy of the right shoulder, obesity, schizoaffective disorder, generalized anxiety disorder, and borderline intellectual functioning (R. 16). At step three, the ALJ evaluated Mr. Spivey's severe impairments against the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and found "the claimant does not have an impairment or

4

combination of impairments that meets or medically equals the severity of one of the listed impairments." The ALJ then adopted, for purposes of steps four and five, the following RFC:

> The claimant can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; sit for 2 hours at one time and up to 6 hours total in an 8-hour workday; stand for 2 hours at one time and up to 6 hours total in an 8-hour workday; and walk for 2 hours at one time and up to 6 hours total in an 8-hour workday; and walk for 2 hours at a time and up to 6 hours total in an 8-hour workday. He should never climb ladders, ropes, or scaffolds; can occasionally stoop, crouch, kneel, crawl, and climb ramps and stairs; and he can frequently balance. The claimant can handle and feel constantly with both arms; reach constantly with his left arm and frequently with the right arm; finger frequently with the left hand and occasionally with the right hand; and only occasionally reach overhead with the right arm. He can understand, remember, and carry out simple, repetitive, and short instructions and he can sustain attention and concentration for 2-hour periods at a time and for 8 hours in the workday on short, simple, and repetitive tasks. He can also use judgment in making work-related decisions commensurate with that type of work and he requires occupations with only occasional coworker contact and supervision. He also requires occupations with set routines and procedures with few changes during the workday and only superficial contact with the public on routine matters. He is also precluded from work with unusual work stresses (R. 22-23).

The ALJ found at step four that Mr. Spivey is capable of performing his past relevant work as a janitor and as a parts puller. (R. 31). She further found at step five and based on the opinion of the vocational expert that he is capable of performing other jobs existing in significant numbers in the national economy. Accordingly, the ALJ found that Mr. Spivey is not disabled.

## II. Mr. Spivey's Assertions of Error

Mr. Spivey asserts multiple errors. He contends that the ALJ (1) failed to analyze properly whether his impairments met or medically equaled Listings 12.03 or 12.05C; (2) failed to summon a medical advisor for purposes of step three; (3)

5

made a patently erroneous credibility determination; and (4) did not give full consideration to his impairments in formulating his RFC. Only the first contention merits extended discussion. The others are undeveloped and not faithful to the record or the governing law. All of the assertions of error involve solely the ALJ's evaluation of Mr. Spivey's mental impairments, even though there was evidence in the record as well as evaluation by the ALJ of physical impairments. The court will therefore confine its discussion to Mr. Spivey's claimed mental impairments and will do so in the context of its analysis of the issues on appeal.

**A. The ALJ did not err at step three.**

1. Listing 12.03

The ALJ evaluated Mr. Spivey's medical impairments against Listings 12.02 (Organic Mental Disorders), 12.04 (Affective Disorders), and 12.06 (Anxiety Related Disorders). Mr. Spivey argues she should have evaluated his impairments for purposes of Listings 12.03 (Schizophrenic, Paranoid, and Other Psychotic Disorders) and 12.05 (Mental Retardation).

Each of the above listings—except 12.05 (which will be addressed separately below)—requires, among other things, that the claimant's mental condition manifest itself at a level of severity measured by the same factors, called the "B" criteria. A claimant whose mental impairment is not manifested at a level of severity tested by the B criteria may then look to the "C" criteria for a particular listing. The ALJ found, in connection with her evaluation of Listings 12.02, 12.04, and 12.06, that Mr. Spivey's impairments do not satisfy the B criteria. Mr. Spivey

does not contend he meets the C criteria with respect to Listing 12.03. Therefore, it matters not whether the ALJ expressly considered Listing 12.03, so long as her analysis of the B criteria was appropriate. Mr. Spivey maintains that it wasn't, because she only selectively considered the evidence relevant to the "B" criteria and should have summoned a psychologist to provide evidence.

The court finds that the ALJ's evaluation of the B criteria is supported by substantial evidence. To satisfy the B criteria, Mr. Spivey's mental disorders must result in at least two of the following:

> Marked restrictions of activities of daily living;
>
> Marked difficulties in maintaining social functioning;
>
> Marked difficulties in maintaining concentration, persistence, or pace (CPP); or
>
> Repeated episodes of decompensation, each of extended duration.

In general, a "marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, effectively, and on a sustained basis." Listing 12.00(C).

A claimant is markedly limited in activities of daily living if his mental impairments cause "serious" difficulty in doing things such as cleaning, shopping, cooking, maintaining a residence, self-grooming and hygiene "on a consistent, useful, routine basis, or without undue interruptions and distractions." Listing 12.00(C)(1). Social functioning examines how the claimant gets along with others, including family members, friends, neighbors, co-workers, shopkeepers, and

7

strangers. Marked impairment may be shown by the claimant's inability to act "independently, appropriately, and on a sustained basis" with others, evidenced by a history of altercations, firings, social isolation, or similar dysfunction, as opposed to "cooperative" behavior with others and a sense of social maturity. Listing 12.00(C)(2). CPP refers to a claimant's abilities to focus and concentrate long enough to complete tasks. Marked impairment may be shown where a claimant cannot sustain a level of concentration to complete even simple tasks without extra supervision or assistance. Listing 12.00(C)(3).

The ALJ provided a detailed analysis of Mr. Spivey's daily activities. The evidence suggested some limitations owing to physical problems (such as inability to do yard work), but in general the ALJ found no evidence that mental impairments affected his ability "perform activities appropriate to his circumstances in life, or to structure a daily routine for himself." (R. 21) The ALJ noted mild social difficulties and moderate difficulties with respect to concentration, persistence, or pace. The court finds no basis for Mr. Spivey's conclusory assertion that the ALJ selectively considered the evidence pertinent to the B criteria.[2]

2. Listing 12.05

Mr. Spivey also argues that the ALJ erred in not addressing whether his impairments meet or medically equal Listing 12.05 (Mental Retardation). He

---

[2]    Although Mr. Spivey does not make the argument, the court has considered whether the ALJ improperly ignored in evaluating the B factors Mr. Spivey's testimony that he suffers from auditory and visual hallucinations. The ALJ provided a lengthy analysis of these symptoms, concluding that the outpatient treatment he has received "has been successful overall in controlling his symptoms." (R.28) Substantial evidence supports this conclusion.

maintains that this listing was met because Dr. Kevin Dugan determined his IQ to be 68. What Mr. Spivey fails to acknowledge is that Dr. Dugan simply reported that as a testing result but deemed it invalid because Mr. Spivey was tested while in a period of active psychosis. Dr. Dugan also noted, consistent with the ALJ's findings, that appropriate medications would likely address his condition. (*See* R. 498.) The ALJ was not required to evaluate Mr. Spivey's impairments against Listing 12.05 because the requisite evidence was not in the record.

        3.   Failure to Summon Additional Medical Expert

Mr. Spivey argues that the ALJ also erred at step three by failing to obtain testimony of a medical expert, in this case a psychological expert. Mr. Spivey ignores, however, that the ALJ was not required to obtain additional expert testimony when there was already medical evidence in the record to enable her to evaluate his impairments for step three. The record demonstrates that she did in fact rely on medical experts. (*See* R. 30-31 (citing reports of Dr. Horton and Dr. Kennedy (R. 509, 521) confirming that Mr. Spivey did not meet the B criteria or otherwise meet or medically equal a listing)). Mr. Spivey's argument in this regard is without merit. *See Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

**B. The claimant's other assignments of error are without merit.**

The ALJ determined that Mr. Spivey's allegations of his symptoms and functional limitations were not entirely credible as to how much they limited his functional capacity to engage in substantial gainful activity. (R. 31) Mr. Spivey maintains this was patently erroneous. It was not. The ALJ made a detailed analysis of Mr. Spivey's functional capacity, citing evidence in the record. (*See* R. 19-31.)

Finally, Mr. Spivey maintains that the ALJ's RFC did not appropriately account for his mental limitations—in particular, his low GAF scores and his reported hallucinations. As to his hallucinations, she determined that medications had proved effective in controlling them. Her RFC further included requirements of "short, simple, repetitive tasks," "only occasional coworker contact and supervision," and "set routines and procedures with few changes during the workday and only superficial contact with the public on routine matters." She further precluded work with "unusual [ ] stresses." (R. 23) This RFC was fully supported by the evidence and did not fail to address the limitations the ALJ had appropriately determined.

Mr. Spivey's assertions of error at steps four and five are without merit.

## Conclusion

For the foregoing reasons, the court AFFIRMS the Commissioner's decision that Mr. Spivey is not disabled. Judgment shall issue accordingly.

So ORDERED.

Date: March 25, 2015

_Debra McVicker Lynch_
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email generated by the court's ECF system